### HUNT v. BAGWELL et al.
#### No. 1702.

Court of Civil Appeals of Texas. Eastland.
Nov. 5, 1937.

Rehearing Denied Dec. 10, 1937.

Kirby, King & Overshiner, of Abilene, for appellant.

Scarborough & Ely, of Abilene, for appellees.

LESLIE, Chief Justice.

Ocie Hunt instituted this suit in trespass to try title against the defendant A. I. Bagwell and his children, Raymond Bagwell, Essie Bagwell Smith, joined by her husband, C. W. Smith, Lavelle Bagwell, Melba Bagwell, and Arzo Bagwell. Some of these children were minors and represented by a guardian ad litem. A..I. Bagwell failed to answer, and the trial proceeded to judgment as between the plaintiff and the other litigants.

The defendants answered by general demurrer, general denial, and by cross-action sued for title and possession of a portion of 65 acres of land awarded to A. I. Bagwell under and by virtue of a partition deed between him and his brothers.

Ancillary to the plaintiff's main suit he sued out a writ of sequestration by virtue of which the defendants were evicted from the entire property in suit. The sequestration proceedings were predicated upon the plaintiff's affidavit to the effect that he was the owner of the 65 acres of land, and was being denied possession thereof by the defendants to his injury.

The defendants further set up that the property was the homestead of their father and mother in her lifetime and was still such as to the children and their father, and would continue so to be until the youngest child, then 10 years of age, should become 21 years of age. They alleged that the sequestration proceedings were sued out "with malice and an evil intent" and sought actual and exemplary damages.

The trial was before the court and jury and the case was submitted upon special issues in response to which the jury returned a verdict in favor of the defendants for a 5/26 interest in the land as their share of the property owned by their mother in the community of herself and A. I. Bagwell. The jury further found that the rental value of their interest in the land, which the plaintiff had deprived them of, was $38.40. A verdict in this amount for actual damages was returned, and, in addition, a verdict for $2,500 exemplary damages.

In certain respects this case was formerly appealed to this court. A. I. Bagwell's right as a widower to mortgage the alleged homestead was there involved. Bagwell v. Hunt (Tex.Civ.App.) 65 S.W.2d 369. Passing upon that question, this court said: "The sole law question presented is: May a widower who resides on premises with his minor children as a homestead execute a valid mortgage or deed of trust lien thereon? This is not an open question in this state. There can now be no doubt of his power to do so. Many cases so holding could be cited, but the following will suffice"— citing same. In that opinion this court observed: "The record does not disclose the nature of the indebtedness for the securing of which the deed of trust was executed, nor does it disclose whether the property was the separate property of one of the spouses, or their community property."

In a sense it is the nature of the property conveyed, or attempted to be conveyed by that mortgage, and the interest, if any, of the appellees therein which now must be determined upon the record before us.

To the end that our views may more clearly appear, a substantial statement of the record and testimony is necessary. J. W. Bagwell and wife, M. A. Bagwell, were the father and mother of 9 children; namely, L. T. Bagwell, W. L. Bagwell, C. H. Bagwell, L. M. Bagwell, V. R. Bagwell, A. I. Bagwell, M. R. Bagwell, J. C. Bagwell, and Dora Bagwell. Dora Bagwell married A. W. Hale. To them were born the following children: Naldie Hale; Nadie Swan (nee Hale); Adrian Hale; Opal Johnson (nee Hale); Era Jones (nee Hale); and Zeoma Hale. The Bagwell brothers and said Hale children are the only surviving heirs at law of said J. W. Bagwell and his wife, M. A. Bagwell.

The Hales brought suit for partition of their mother's share as between themselves and the Bagwell brothers. A judgment was obtained setting aside to them 45 acres of land as their inherited share of their

grandparents' estate. This left ⅝ of the said estate undivided and owned by the 8 Bagwell brothers, of whom the defendant A. I. Bagwell is one. Later these 8 brothers partitioned that property among themselves by deed dated November 12, 1927. The deed was joined in by the wives of such of them as were married, including Eddie Bagwell, the wife of A. I. Bagwell. This partition deed, which was duly acknowledged, after naming the several Bagwell brothers and their respective wives, recites that the parties "have and hold in common the lands hereinafter mentioned and are desirous of making a partition of the same; it is hereby covenanted, granted and concluded and agreed by and between said parties; and each of them covenants, grants, concludes and agrees for himself, themselves, his and their heirs and assigns, that a partition of said land be made as follows, to wit: * * *

"3. The said A. I. Bagwell shall from henceforth have, hold, possess and enjoy in severalty by himself and to him and his heirs and assigns for his part, share, interest and proportion of the said lands and premises all that certain tract of land situated in Taylor County, Texas [description embracing 65 acres of land] and the other parties hereto do grant, release and confirm unto the said A. I. Bagwell, the premises above described. * * * To have and to hold the above described premises with all and singular the rights, hereditaments and appurtenances thereto in any wise belonging, unto the said A. I. Bagwell, his heirs and assigns forever."

The first section of the deed awarded L. M. Bagwell 59 acres of land. The second section awarded C. H., L. T., J. C., and M. R. Bagwell, jointly, 132 acres. The fourth section awarded 40 acres to V. R. Bagwell and the fifth 40 acres to W. L. Bagwell. None of the heirs are dissatisfied with that partition and no attack is made on the same by any one. After the consummation of the partition and delivery of the deed, the wife of A. I. Bagwell died and he thereafter, while residing with his children (appellees herein) on said land, gave a deed of trust lien on the same to C. M. Hunt, trustee, to secure a note of $1,400 given by said Bagwell to plaintiff, Ocie Hunt. This was not by way of settlement or adjustment of any community debt owed by him and the deceased mother of appellees. Said note fell due January 1, 1934, suit was instituted thereon, and lien foreclosed and the prop-

erty conveyed at sheriff's sale to Ocie Hunt, plaintiff herein. For about two years thereafter he rented the premises to Raymond Bagwell, the eldest son of A. I. Bagwell and his deceased wife. The other children, as well as A. I. Bagwell, resided upon the premises during said time. About the end of that period the appellees seem to have concluded that they owned certain homestead rights in the 65 acres of land. So believing, they notified Ocie Hunt that they were "entitled to the possession of the A. I. Bagwell farm until the youngest child reaches his majority." He was also directed to return to these children $200 rents paid by them the past two years.

In response to the position taken by the appellees, or A. I. Bagwell's children, the plaintiff, Ocie Hunt, instituted this suit in trespass to try title seeking to recover the entire 65 acres of land, or, in the alternative, such interest as he may have acquired under the foreclosure proceedings. The homestead claims of the appellees and their threat to retain possession of the property form the basis of plaintiff's alleged right to the writ of sequestration. These appellees were not parties to the original suit. 65 S.W.2d 369. On the trial of the instant one, the plaintiff, Hunt, pleaded and proved his title to the 65 acres, tracing same through said foreclosure proceedings, sheriff's deed, and partition deed setting same aside to A. I. Bagwell. It is unnecessary to make a further detailed statement of the instruments and conveyances by which Hunt asserts title to the 65 acres, but the various steps and proceedings leading up to and vesting title, if any, in him, are in no wise attacked and they show good legal title to the land in the plaintiff, Ocie Hunt, unless the partition deed can be varied or added to by parol testimony which was introduced by the defendants over the objections and exceptions of plaintiff in the respects presently to be discussed.

The appellees' contentions and pleadings which are presented as a basis for their parol testimony set up in substance that although the partition deed purports to set aside to A. I. Bagwell 65 acres of the common property as an inheritance, nevertheless, in truth and in fact, a substantial part of that acreage was sold and conveyed to him for a consideration which belonged to him and their deceased mother, as community property. It is their contention that the elder Bagwells, J. W. and M. A., during their lifetime and at the time of

their death, owed A. I. Bagwell a sum of money amounting to about $750; that when the Bagwell brothers met for the purpose of partitioning the property remaining to them (after the Hale children received their share), they recognized the obligation owed by their parents to A. I. Bagwell, and that in order to compensate him therefor, or to equalize his rights in the estate, they agreed to so partition the property that he, in receiving the 65 acres, would receive as a part thereof an amount of land over and above his inheritance sufficient to compensate him for the services which he had rendered them, and which taken in connection with certain sums and property paid by him to two of the other heirs equalized his interest in the estate.

As above stated, the jury found in response to issue No. 2 that 5/13 of the "A. I. Bagwell 65 acres was paid for with funds, or property, or money due for services, not inherited by A. I. Bagwell, and [but] accumulated by A. I. Bagwell and his wife during their married life." In response to issue No. 4, the reasonable rental value per year of the A. I. Bagwell 65 acres was found to be $200. The court determined that based upon ownership therein $38.40 thereof belonged to the children as actual rental damages for being dispossessed of the property.

The testimony is not entirely clear as to the exact terms or reasons which prompted the Bagwell brothers to make the particular partition which they did. The lands evidently being of different values, adjustments were made, setting aside the different amounts, and the payment of certain considerations on the part of some to others as an equalization of common rights in the estate. As will be noticed, 132 acres were set aside to four other brothers, C. H., L. T., J. C., and M. R. The testimony indicates that two of these, C. H. and L. T., sold out to the other two for a consideration of $2,700 paid to each. The record does not contain the deed, if any, by which they conveyed their respective interests. A. I. Bagwell appears to have paid J. C. and M. R. the benefit of the indebtedness owed him by the estate of his father and mother, J. W. and M. A. Bagwell. At one point he testified:

"Q. Then you gave to your brothers J. C. and M. R. the entire benefit of the indebtedness of $600 or $700 whatever it figures up that your father's estate owed? A. Yes sir."

Other members of the family he paid nothing, and neither did he pay anything to the Hale heirs.

While on the witness stand he testified as follows:

"Q. Now I believe you claim that by virtue of the fact that you paid J. C. and M. R. Bagwell $250 cash, gave them a mule worth $150; that is $400, and the $75 cow —that is $475—and gave them credit for all the work that you had done for your father, that you got an additional interest in your father's estate, that is your claim isn't it? A. Yes sir.

"Q. Well, now, those other heirs, except J. C. and M. R., they all had an interest in this indebtedness didn't they, that your father owed you? A. Well they should have and did have.

"Q. But you didn't give them anything? A. No, I didn't give them anything.

"Q. How is it then, that you claim that you got an additional interest in your father's estate, by paying money and trading some property to two of your brothers when you didn't pay anything to your other five brothers? A. Well, I figured that these two didn't get enough land. Its the way that they figured it.

"Q. And that was the trade you made between you and them? A. Yes, and the rest of them knew about it.

"Q. They knew about it, but they did not get anything out of it? A. That's right.

"Q. And you figured by virtue of the fact that you made a trade with two of your brothers to acquire an additional interest in your father's estate though the other heirs you didn't pay anything? A. Did not pay them anything."

There is other testimony that J. C. and M. R. Bagwell, who received a portion of the 132 acres, were paid by their brother Leander $100, which they divided between them. It is not clear what this was paid for, and if it was to equalize in value the property partitioned (which it probably was), it is not made to appear why Leander Bagwell alone contributed the same.

We shall not stop here to analyze the testimony or to determine whether or not it evidences acquisition of property from each of the other heirs but this and other testimony like it illustrates the nature of the parol testimony by which the appellees seek to show themselves owners of one-half of some interest (not definitely stated in the pleadings) in an alleged part of the 65 acres

designated by the partition deed as belonging to A. I. Bagwell by right of inheritance. Except as they make claims based upon homestead rights they do not seek to recover any land inherited by him from his parents' estate nor his share of what they alleged to be community interest of himself and their deceased mother. This they would concede he had a right to mortgage unless forbidden by their homestead right.

We are of the opinion that the partition deed setting aside to A. I. Bagwell the 65 acres of land cannot under the pleadings be successfully attacked by the type of testimony here offered by appellees. After the execution and delivery of the partition deed the title of A. I. Bagwell was the same as it was before the execution thereof; namely a title by virtue of inheritance from his parents, and, therefore, his separate property. The decisions of this state are to the effect that "A partition between joint owners does not confer title upon either, but has the effect only to dissolve the tenancy in common, and leave the title as it was before, except to locate such rights as the parties may have, respectively, in the distinct parts of the premises, and to extinguish such rights in all other portions of that property." Walling v. Harendt (Tex.Civ.App.) 37 S.W.2d 280, 282, and numerous authorities therein cited.

The partition deed in the instant case is not challenged for fraud, accident, or mistake. Until it is avoided by some proper proceeding to that end, it stands as an effective bar against the rights of heirs of Mrs. A. I. Bagwell, and the children of A. I. Bagwell to recover any interest in the land in controversy. The homestead claim is not a valid defense as decided in the former appeal. 65 S.W. 2d 369. The appellees' pleadings do not mention the partition proceedings and they do not attack it upon any ground that will avoid its binding effect.

In balancing and equalizing the assets and liabilities of the estate of the elder Bagwells (if there be any legal evidence of such intention), the Bagwell heirs effected the partition evidenced by the above deed. It contains no recitals evidencing a conveyance of 65 acres of land, or any part thereof, or any particular interest therein to A. I. Bagwell. It purports to be nothing more nor less than a plain partition deed between co-owners of common property. It so states. It sets aside an inheritance of 65 acres to A. I. Bagwell.

He mortgaged the same and thereafter lost it by foreclosure and sale to the plaintiff herein, who holds good title thereto. Appellees cannot deraign title through the partition deed, for it conveys no title. The parol testimony offered by the appellees does not come within the rule which permits the explanation, etc., of a consideration supporting a conveyance. The effect of this testimony is to destroy the instrument itself, and the contractual recitals and covenants therein undertaken by the heirs one toward another, and all in behalf of each. If the deed is more than a partition deed, such fact is not evidenced by its terms or any other written instrument meeting the requirements of the statute of frauds (Vernon's Ann.Civ. St. art. 3995).

To illustrate the point further, if this proceeding to partition the land had been entirely by parol, as it might have been, could it be successfully contended that the alleged surplus acreage, if any (above inheritance and embraced in the 65-acre tract), was conveyed to A. I. Bagwell as the result of the alleged negotiations between the brothers and here sought to be proved? Absent possession and the making of valuable improvements on such surplus lands, no such conveyance could have been thus shown and under the unchallenged recitals of this deed of partition the appellees are not in a position, under the rules of evidence, to make of the partition deed a conveyance of title by purchase, contrary to its recitals. Its terms, therefore, stand and cannot be impeached in a suit in trespass to try title as is attempted to be done. Hunt's title cannot thus be collaterally attacked. Rippetoe v. Dwyer, 49 Tex. 498.

Stated somewhat differently, the statute of frauds and the parol evidence rule operate, jointly and singly, to render the parol evidence offered on the trial inadmissible in this case. If the appellees owned any interest in the 65 acres of land, that can be true only because such interest was acquired by purchase by their father, A. I. Bagwell, and his wife (mother of appellees) after their marriage and before her death. Such interest would necessarily be exclusive of and distinct from that part of the 65 acres acquired by A. I. Bagwell by inheritance from his parents. To prove such ownership it was necessary for these heirs, or appellees, to show title in themselves. Title is legal evi-

dence of ownership and with few restricted exceptions proof of ownership of the land is required by the statute of frauds to be evidenced by written conveyances. A partition deed, as pointed out, is not a conveyance. It is no proof of a transfer of ownership or title from one owner to another. In the instant case, the partition deed is all the proof that was available to the appellees to show ownership in themselves. Since under the rules of law and evidence that deed by its terms was no proof of title or ownership, it was sought, by the introduction of parol evidence, to aid and convert the partition deed into proof of ownership. To permit such would have the legal effect of showing that an unambiguous partition deed was something other than what it plainly purported to be. The partition by the parties operated only to sever their unity of possession. It did not create or confer on the parties any new, different, or additional title, or enlarge or diminish the estate. 47 C.J. 280. Obviously, such deed is but written evidence that the ownership of the tract of land allotted to each party is identical with the immediate previous ownership of each common owner in the whole body of land partitioned. Logically, the partition deed in question is therefore written evidence that the 65 acres awarded A. I. Bagwell was his separate property by inheritance from his parents. Parol evidence designed to show that part of the 65 acres was purchased with community funds of A. I. Bagwell and wife, and that such part of the 65 acres was therefore community property, would have the effect of directly contradicting the written evidence and would therefore be inadmissible. Even when a contract is partly oral and partly written, the written part may not be varied by parol evidence. As said in Williston on Contracts (Vol. 2, § 636): "If a contract is even partially reduced to writing, the written portion is no more subject to contradiction by parol than the entire contract would be had it been wholly reduced to writing." Roberts & St. John Motor Co. v. Bumpass (Tex.Com.App.) 65 S.W.2d 399, 402.

Again the operation of the statute of frauds would exclude the evidence offered to show that the partition deed conveyed title to land. For instance, it would be no more reasonable to show by parol evidence that the transaction (of which the partition deed is evidence and which is not required to be in writing, but may be oral) was intended to be a conveyance of land than to show by parol evidence that a simple receipt for money was intended and understood by the parties to be a conveyance of land, or some interest therein.

Based upon these considerations, we conclude that the plaintiff, Hunt, shows title to the 65 acres of land, and that the appellees have failed to show any interest therein and are unable to do so by reason of the nature of their testimony which is all they have to offer.

■ Further, if by the services rendered his parents, plus certain amounts ($250, cow and calf, horse, etc., delivered to M. R. and J. C. Bagwell)—all amounting to possibly $1,250—A. I. Bagwell in fact purchased any portion of said 65 acres, then we are compelled to hold that there is no evidence to show the distinct amount or interest so purchased, and no pleading specifies the same. Could effect be given to the parol testimony, we fail to find in the pleadings or testimony a basis for the issue and jury finding that the appellees owned a definite $5/26$ of the 65 acres. There is no pleading and no testimony that there was embraced in the 65 acres a definite surplus or over plus of 25 acres intended to be conveyed by the other heirs as compensation for the items above stated. It is not shown by the testimony why $25/65$ or $5/13$ should have been taken by the jury as the measure of the amount of land purchased by A. I. Bagwell, and his wife, and attempted to be set aside to them, along with his inheritance in a 65-acre tract.

True, the fourth section of the deed allotted to V. R. Bagwell 40 acres and the fifth section awarded the same amount to W. L. Bagwell. Sixty-five acres less 40 acres is 25 acres. Twenty-five divided by 65 gives the fraction $5/13$ found by the jury to be the community interest of A. I. Bagwell and his deceased wife in the 65 acres of land. If this be sound reasoning or a mathematically correct proposition, it would seem that there would be just as much basis for taking 45 acres awarded to the Hale heirs. Subtract that from 65 acres awarded A. I. Bagwell and the remainder is 20. Why should not $20/65$ ($4/13$) represent the amount of land purchased, if any, by A. I. Bagwell and embraced in the 65-acre tract? Four of the heirs received 132 acres. That would be 33

acres each. Subtracting 33 from 65 the result would be 32. Why not take $^{32}/_{65}$ as representing the amount of land so purchased along with the inheritance? The testimony will not be further discussed, but we conclude that there is none to support the verdict in the respect we have just pointed out.

However, basing our judgment upon the first portion of the opinion in which we hold that the court erred in not granting a peremptory instruction in favor of the plaintiff, it necessarily follows that he is not liable either for actual or exemplary damages. The award of title to sequestered property to the party who has sued out the writ of sequestration is a bar to an action for wrongful sequestration. 38 Tex.Jur. p. 255, § 91, and the authorities there cited. Other questions presented become immaterial. Believing the testimony to be conclusive in respect to the ownership of the property in controversy and that the evidence has been fully developed, it is our opinion that the judgment of the trial court should be reversed and judgment here rendered for plaintiff. It is so ordered.