**HAMILL & SMITH et al. v. OGDEN et al.**

No. 11331.

Court of Civil Appeals of Texas. Galveston.

May 7, 1942.

Rehearing Denied July 9, 1942.

Bryan, Suhr, Bering & Bell, E. H. Suhr, and Chas. W. Bell, all of Houston, for appellants.

Nat Friedman and K. C. Barkley, both of Houston, for appellees.

MONTEITH, Chief Justice.

This action was brought by appellees, Ralph Ogden and M. R. Reed, for the recovery of certain sums which were alleged to have been withheld from them by appellants, Claud B. Hamill and R. E. Smith, and Continental Oil Company, in the settlement of the affairs of jointly owned and operated oil leases.

Appellees pled four grounds of recovery: the sum of $9,237.55, alleged to be their ⅓ interest in a reduction in oil payments and overriding royalties made by the Pure Oil Company as a contribution to a settlement of a suit brought against appellants and the Pure Oil Company by one Amadeo Hubbard; ⅓ of $2,489.25, alleged to have been realized from a reduction in overriding royalties made by the Pure Oil Company in consideration of the drilling of

certain test wells on a mineral lease known as the Ruiz lease (this ground of recovery was abandoned by appellees); $901.15, ⅓ of $2,703.47, alleged dividends claimed to have been paid to appellants, because of their record in avoiding accidents, on a workmen's compensation policy covering employees on a lease in McMullen County; and $1,277.41, alleged to be due appellees on an accounting of the joint operations of said lease.

The case was submitted to the jury on a general charge in answer to which the jury returned a verdict in favor of appellees and against appellants for the sum of $5,000. Upon this verdict and upon independent findings made by the trial court, judgment was rendered in favor of appellees against appellants for the sum of $8,775.92 and against Continental Oil Company, as purchaser of the oil, for the sum of $869.22.

The record shows that the Pure Oil Company, the owner of a ⅞ mineral lease on 320 acres of land in Duval County, Texas, known as Survey No. 77, assigned said lease to Claud Hamill, reserving a $40,000 payment to be made out of ⅞₃₂ of the oil and gas derived therefrom, and ⅛ overriding royalty on flowing wells and a ¹⁄₁₆ overriding royalty on pumping wells.

On January 1, 1936, Claud B. Hamill assigned an undivided ⅓ interest in this lease to Ralph R. Ogden, subject to the oil payment and overriding royalty reserved to the Pure Oil Company. Ralph Ogden assigned to M. H. Reed an undivided ½ of said ⅓ interest on February 10, 1936.

On January 23, 1936, Amadeo Hubbard filed suit against Claud H. Hamill, R. E. Smith, the Pure Oil Company and others to recover this land and the sum of $600,000 damages for oil produced therefrom. Appellees were not made parties to this suit. A settlement of this suit was arranged, under the terms of which the Pure Oil Company agreed to contribute and later paid to George B. Parr, the attorney representing Amadeo Hubbard, through appellants, the sum of $6,666.66 of its $40,000 oil payment and ¹⁄₄₈ of its overriding royalties on flowing wells and ¹⁄₉₆ of its royalties on pumping wells. Under this settlement, Amadeo Hubbard gave Smith and Hamill a ⅞ mineral lease on said land, which was later assigned by them to the Pure Oil Company to protect its remaining oil payments and overriding royalties, and a release of his claim for damages for the oil removed

from the land. Smith and Hamill paid him $1,000 in cash for this release.

On July 29, 1936, Adolpho Patterson et al., filed suit in the district court of La Salle County, Texas, against Amadeo Hubbard, Claud B. Hamill, R. E. Smith and Ralph R. Ogden for the title and possession of the land in question and for damages for the oil removed therefrom.

Appellants and appellees paid plaintiffs $1,000 in settlement of this suit.

Thereafter, at the instance of said George B. Parr, appellants advanced $16,972.55 to drill a test well on a block of land in McMullen County, Texas. Appellants reimbursed themselves for George B. Parr's half of the expenses of drilling this well by withholding one-half of the cost of drilling the well from the oil payments on the reduction in overriding royalties and oil payments contributed by the Pure Oil Company in the settlement of the Amadeo Hubbard suit. Appellees contended that they were improperly charged by appellants with this sum.

On December 22, 1936, appellants and appellees executed a partition deed, partitioning and setting aside to each their interests in various properties, including 120 acres of the Hubbard lease and 13 wells thereon.

From the time these interests were acquired by appellees until December 31, 1936, the date on which said partition became effective under said partition deed, the properties had been jointly operated by appellants and appellees, the actual supervision being in charge of Hamill and Smith.

Appellants contend that the court having submitted this case to the jury on a general charge embracing all grounds of recovery relied upon by appellees and the jury having returned a verdict thereon in favor of appellees for the sum of $5,000, it was error for the trial court in rendering its judgment, to consider findings of fact not found by the jury, even if they had been supported by uncontradicted evidence. This contention, we think, must be sustained.

The trial court submitted to the jury a general charge embracing appellees' three alleged grounds of recovery. The jury returned a verdict against appellants for the sum of $5,000. In rendering his judgment, the trial court found, in substance, in addition to the verdict of the jury, that appellants had collected and been paid the sum of $3,318.67 on account of the reduction in overriding royalties and oil payments by the Pure Oil Company on oil marketed by appellants during the years 1937, 1938, 1939, and through June 1940, from that part of the Hubbard lease set apart to appellees under said partition deed, and that appellees were entitled to recover this sum from appellants with 6% interest from January 31, 1937, the date upon which said partition became effective. This sum was added to the sum of $5,000 found by the jury, and judgment was rendered by the trial court against appellants for the sum of $8,775.92 and against Continental Oil Company for the sum of $869.22.

It is apparent from a reading of the court's charge that the entire case was submitted to the jury therein and that the court did not therein limit appellees' recovery to the oil runs covering the reduction in oil payments and overriding royalties prior to December 31, 1936, the effective date of the partition.

■ It is, we think, the established law in this state that in a case submitted on a general charge a trial court cannot render a judgment on findings made by him in addition to those found by the jury in the general verdict, even where the trial court's findings are supported by uncontradicted evidence.

■ In the case of Houston Packing Co. v. Griffith, Tex.Civ.App., 164 S.W. 431, 432, the facts were similar in all material respects to those in the instant case. In that case Griffith sued the Packing Company for damages for breach of contract because of the refusal of the Packing Company to accept delivery of certain cattle. The trial court submitted the case on a general charge. The jury returned the following verdict: "We, the jury, find for plaintiff damages to amount of $1,732.26, less freight." The court entered judgment for plaintiff for $1,732.26. The San Antonio Court of Civil Appeals held that this verdict required the court to look to the evidence to enter a proper judgment, which could not be done, holding: "When reference to the evidence is required, according to our decisions, the verdict is not sufficiently certain to be the basis for a judgment, even though the evidence be undisputed."

This rule is followed in the following cases: Ablowich v. Greenville Nat'l. Bank,

95 Tex. 429, 67 S.W. 79; Moore v. Moore, 67 Tex. 293, 3 S.W. 284.

Appellants assign error in the action of the trial court in assuming as a matter of law that the partition deed of December 22, 1936, vested in appellees title to the overriding royalties and oil payments contributed by the Pure Oil Company.

They contend that said partition deed did not vest title to this interest in appellees, for two reasons: (a) That the reduction in oil payments and overriding royalties were paid to George B. Parr under the agreement with him for the settlement of the suit filed by Amadeo Hubbard against Hamill and Smith and the Pure Oil Company; and (b) t'lat a partition sets apart to the parties under a specific tract the interest they own under the whole, and nothing more.

It is the established law in this state that a deed of partition does not convey title to the property involved, but merely partitions possession and dissolves tenancy in common.

In the case of Houston Oil Co. of Texas et al. v. Kirkindall et al., 136 Tex. 103, 145 S.W.2d 1074, the Supreme Court, under a state of facts similar in all material respects to those in the instant case, held that in an instrument of partition where the parties are definitely shown to be taking the land involved as their share thereof, that the instrument is an instrument of partition and not a conveyance, and that even though the partition of the property vests each of the parties thereto with a separate ownership of the particular tract of land allotted to him, the transaction is deemed not to operate as a conveyance or transfer of title (32 Tex.Jur., page 146; Chace v. Gregg, 88 Tex. 552, 32 S.W. 520; Davis v. Agnew, 67 Tex. 206, 2 S.W. 43, 376), and that a deed of partition does not convey or confer title, but merely dissolves the tenancy in common. Edwards v. Worthington, Tex.Civ.App., 118 S.W.2d 328; Reyes et al. v. A. O. Kolberg, Inc., Tex.Civ.App., 101 S.W.2d 351; Jones et al. v. State, Tex.Com.App., 5 S.W.2d 973; Hunt v. Bagwell, Tex.Civ. App., 111 S.W.2d 312, 313.

When appellees acquired from appellants an undivided ⅓ interest in this lease it was assigned to them "subject to oil payment and overriding royalties reserved by The Pure Oil Company in two assignments to the assignor" (C. B. Hamill). The assignment under which C. B. Hamill held title reserved to the Pure Oil Company $40,000, payable out of ⅞₂ of the oil and a 1/16 overriding royalty on pumping wells. The $6,666.66 oil payment and 1/48 overriding royalty on flowing wells and 1/66 on pumping wells contributed by the Pure Oil Company to the settlement of the Amadeo Hubbard suit were not working interests, they were new, different, and additional interests from the working interest which appellees acquired title to by the assignment from C. B. Hamill. Under the rule that a partition vest no additional, new or different title or estate than the parties owned, this oil payment and overriding royalty, even if appellants had not contracted to deliver it to George B. Parr, would not have passed to appellees by that partition.

It follows that appellees owned no interest in the oil payment and overriding royalty and therefore the action of the trial court in assuming that the accumulations from oil runs on this interest subsequent to the partition were, as a matter of law, owned by appellees and that in the judgment he could add this to the $5,000 found by the jury, was, we think, clearly erroneous.

Appellants assign error in the misconduct of the jury prejudicial to them, in that they considered, before arriving at their verdict, (a) the wealth of appellants and how inconsequential $5,000 would be to them, and (b) that the case would be appealed and that therefore their verdict would be immaterial.

The alleged misconduct of the jury consisted of a discussion while deliberating and before arriving at a verdict, as to these points.

Four of the jurors before whom the case was tried were interrogated on the hearing of the motion for a new trial. One of the jurors, J. E. Shifani, testified that there had been a discussion after the jury had retired to the jury room as to the wealth of the parties, and there was something said that what disposition we made would be just like a nickel to us, that they had plenty of money.

"Q. Did that influence you in allowing the plaintiffs $5000.00? A. Well, not as much as the question brought up where it was said the disposition we made wouldn't make any difference."

"Q. Why wouldn't it make any difference? A. Because the case would be appealed."

Another juror, A. E. Chronister, testified:

"Q. Was there any discussion about the wealth of the parties in the jury room? A. Well, yes, that was brought up. * * *

"Q. Do you remember any particular expression or any particular statements that were made as to the effect of the amount of the award on the parties, etc.? A. Well, there was some of them talking 'what difference does it make which way it goes, they have money to pay it.' We taken the vote on it; and it was 9 to 3 not to give them anything."

"Q. Did it have any effect on the jury's verdict? A. I wouldn't say, but I don't believe it had any effect on me. * * *

"Q. Was the verdict for the plaintiff in the sum of $5000.00 the verdict you wanted to render in that case? A. No."

Another juror, Ogden Beaumont, testified:

"Q. Do you remember what statements were made? A. I don't remember who brought it up, but one statement I presume that was said was something about $5000.-00 being a drop in the bucket to give Reed and Ogden. * * *

"Q. I will ask you whether or not there was any discussion as to whether or not a verdict of the jury was immaterial because of the fact that the case would be appealed or compromised regardless of the verdict. A. Yes."

■ It is the settled law of this state that where the jury is guilty of misconduct, and from the whole of the pertinent record it is reasonably doubtful to the appellate court itself whether or not such misconduct affected the verdict or any material question, such verdict will not be allowed to stand. City of San Antonio v. McKenzie Const. Co., 136 Tex. 315, 150 S.W.2d 989, and cases there cited.

In the case of Texas & N. O. Ry. Co. v. Ewing, 46 S.W.2d 398, 401, this court held, that on a hearing for a new trial, where it was shown that the jurors volunteered statements of their own to the effect that "it made no difference what verdict they rendered, that the railroad would appeal the case anyway", and it was shown that certain of the jurors had been influenced thereby in agreeing to the verdict as returned, that the verdict must be set aside,

since each juror can rightly agree to the verdict only when guided solely by the instructions of the trial judge and the evidence heard in open court.

In the case of Moore v. Ivey, Tex.Com. App., 277 S.W. 106, 107, the jury after retiring to the jury room discussed the probability of the matter in issue being covered by insurance. The question of attorney's fees was also discussed, and that such verdict would be a lesson to other doctors. The Commission of Appeals in its opinion held:

"It may be clear that eleven (or a lesser number) of the jurors were not, to any degree, influenced by the improper conduct; yet if it remains reasonably doubtful whether one (or a larger number) was, or was not, influenced, the vice remains and the verdict must be set aside * * * because each juror can rightly agree to the verdict only when guided solely by the instructions of the trial judge and the evidence heard in open court. A proper corollary is that, when misconduct is once shown, and there is reasonable doubt as to its effect, that doubt must be resolved against the verdict."

In Texas & P. Ry. Co. v. Gillette et al., 125 Tex. 563, 83 S.W.2d 307, the jury discussed attorney's fees plaintiff's counsel would receive out of the amount for which they might render a verdict. The appellate court held, in reversing the judgment of the trial court, that when misconduct of the jury in reaching a verdict is shown, a reversal will follow unless the record negatives beyond a reasonble doubt that such misconduct influenced any juror.

■ In the instant case it is undisputed that the misconduct complained of occurred. It is undisputed that it influenced the jurors Shifani and Beaumont. It follows that the verdict should have been set aside.

The errors pointed out require, in our opinion, a reversal of the judgment of the trial court.

Other propositions are presented in appellants' brief and some of them, particularly those with reference to statements made by counsel for appellees in his argument to the jury, wherein he stated that appellants were wealthy men in a manner calculated to influence them in arriving at their verdict, are probably well taken. However, since this case must be reversed

it is not probable that these questions will arise upon another trial.

The judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.