No. 5334.

## D. B. GRIGSBY v. JEFFERSON PEAK.

1. ESTOPPEL.—One who conveys by deed the interest in land set apart to
   him in partition between himself as an heir of his father, and other heirs
   of his father, is not estopped thereby from asserting title to a larger in-
   terest in the same land inherited from his mother, who was not a party
   to the proceedings and the interest of whose estate was not adjudicated
   therein.
2. WARRANTY.—A warranty is implied in cases of compulsory partition be-
   tween tenants in common, yet, whatever may be the rule since the
   adoption of the Revised Statues (art. 3488), such implied warranty is not
   equivalent, as to the measure of right secured, with a general warranty
   created by a deed which evidences a purchase and sale. Thus, the war-
   ranty which is implied in compulsory partition between heirs extends
   only to the title under which each received his distributive interest, and
   does not include an interest in one of the parties existing by virtue of a
   title not asserted in the partition proceedings, and which was never ad-
   judicated therein.
3. SAME.—A partition is based on the assumption that the parties thereto
   own the thing partitioned. It is to protect those who in partition
   receive that which was not owned in common, that an implied warranty
   exists, and it can be regarded only so far as may be necessary to give
   such protection.
4. SAME.—The implied warranty in partition only enables that party whose
   title to his allotted share of land fails, to enforce contribution in pro rata
   value of what was really owned, or, in repartition, from those who were
   allotted the common property; he can not recover from them the value
   of his share as formerly allotted. The warranty embraced in a deed of
   conveyance secures a different and more extensive measure of right.

APPEAL from Dallas. Tried below before the Hon. A. S. La-
throp, Special Judge.

*Richard Morgan, jr.,* and *Jeff Ward, jr.,* for appellant, cited
Grigsby v. Peak, 57 Texas, 151, 152; Grigsby v. Caruth, 57
Texas, 269, 273; Ross v. Armstrong, 25 Texas Supplement, 369,
370, 373; Sawyers v. Cator, 8 Humphries, Tennessee, 276, 278,
283, 284, 286, 287; Cruise's Digest, volume 4, title 42, chapter 24,
paragraphs 19, 20, on marginal pages 381, 383; Freeman on Co-
tenancy and Partition, sections 533, 155, 156; Walker v. Hall, 15
Ohio State, 355, and Weiser v. Weiser, 5 Watts, Pennsylvania,
279.

*Stemmons & Field* and *Leake & Henry*, for appellee, cited article 3483, Revised Statutes; Ross v. Armstrong, 25 Texas Supplement, 355; Freeman on Cotenancy and Partition, section 533; Washburne on Real Property, volume 1, page 390; Venable v. Beauchamp, 3 Dana, 422; Forder v. Davis, 38 Missouri, 112; Picot v. Page, 26 Missouri, 420.

In this case counsel for both sides filed exhaustive and able written arguments.

STAYTON, ASSOCIATE JUSTICE. The leading facts involved in this case are stated in the cases of Caruth v. Grigsby, and Grigsby v. Caruth, reported in 57 Texas, 259, 273. Every question but one raised in this case was decided adversely to the appellee in the cases above referred to. The question not decided in the cases mentioned arises on the following facts:

1. The land of which that in controversy is a part was community property, owned by John Grigsby and his wife, Louisa.

2. John Grigsby died in 1841, leaving nine children, of whom seven were by a former wife, and two (D. B. and Emeline Grigsby) were the children of himself, and his wife Louisa.

3. The entire land in controversy in this action, belonging to John and Louisa Grigsby, was partitioned in the probate court having the administration of his estate, among his nine children, each one taking an equal share.

4. There was no partition between the estates of John Grigsby and his wife Louisa, and that made purported to be only a partition of the estate of John Grigsby.

5. Louisa Grigsby having married after his death, had one child by her last husband, who is Maria Louisa Swindle, and a party to this action, to whom, however, nothing was given in the partition to which we have referred, she not being an heir of John Grigsby.

6. After the partition was made Emeline Grigsby sold the part of the tract set apart to her to the appellee and others, and D. B. Grigsby subsequently sold the part set apart to him to other persons.

From this statement it will be seen that each of the nine children of John Grigsby only inherited from him one-eighteenth of the tract of land of which that in controversy is a part, but in the partition made they each received two-eighteenths of the entire tract partitioned. It will be further seen that D. B.

Grigsby and his sister Emeline, as well as the child of their mother by her second husband, each inherited from their mother three-eighteenths of the land in controversy in this action.

Through the partition of John Grigsby's estate each of his children by his first wife received double the quantity of land they inherited from him, while D. B. and Emeline Grigsby in that partition only received one-half of the land to which they were entitled by inheritance from their father and mother, while the daughter of their mother by her second husband received nothing at all.   This action was brought by D. B. Grigsby to recover two-eighteenths of the land described in the petition, same as that partitioned as the estate of his father, while Mrs. Swindle seeks to recover three-eighteenths of the same land. The appellee claims nothing except through the conveyance of Emeline Grigsby.

In the case of Caruth v. Grigsby, 57 Texas, 259, it was held that the appellant was not precluded by the decree of the probate court, which preferred only to partition the estate of John Grigsby for ascertaining his right to recover on his claim based on inheritance from his mother, on the ground that a party is concluded by a judgment in the right only on which he sues or is sued.

In the case of Grigsby v. Caruth, 57 Texas, 269, the court instructed the jury as follows:   "You are charged that if you believe from the evidence that Daniel B. Grigsby accepted the portion of the land set aside to him by the probate court of Anderson county, in the attempted partition of the league and labor survey originally granted to John Grigsby, and afterward conveyed it by deed or deeds, referring to such partition as his source of title, he will be concluded as respects the property embraced in the petition, and you will find for the defendant William Caruth against the plaintif Daniel B. Grigsby."

The facts in that case were such as to involve the same questions and principles as are involved in this, and it has held that the facts embraced in the charge given did not create an estoppel. The decisions in those cases to which we have referred are directly applicable to this, which is but a part of the case in which those decisions were made, severance having been made. Seeing no reason to doubt the correctness of the decisions made in the cases referred to, the questions again presented in this case will not be further discussed.

On the trial of this cause the court gave the following charge:

"If the plaintiff D. B. Grigsby was a party to a proceeding in the probate court of Anderson county, in which the land in controversy in this suit was partitioned, and if the said Daniel B. Grigsby was allotted a portion of said land, and if he subsequently accepted a portion of the land so allotted to him, and after he became of age (twenty-one years), sold it, he is bound by the law of implied warranty—that is to say, the law annexes to such partition a warranty of title from one to the other of the parties or co-tenants in such partition, and the said D. B. Grigsby not having been disturbed in the possession of or evicted from the portion assigned to him in such partition, can not recover in this suit, and you will as to the said D. B. Grigsby, if you find such facts to exist, find a verdict for the defendant." Under this instruction a verdict and judgment were entered against D. B. Grigsby.

It is now insisted that this charge was incorrect in view of the facts of the case. That a warranty is implied in cases of compulsory partition made between tenants in common is true. Ross v. Armstrong, 25 Texas Supplement, 355. This rule is now made statutory (Rev. Stats., art. 2483), but it is unnecessary to consider whether the warranty given by the statute is more comprehensive than was implied before the statute was passed, for, be that as it may, this case must be determined upon the principles applicable to the question before the adoption of the Revised Statutes.

In determining the nature and extent of a warranty implied on compulsory partition, it becomes necessary to consider the reasons which gave rise to the implication, and the purposes of justice intended to be subserved by it. Every rule, the outgrowth of long experience and observation, has its reason, and is established for the preservation of rights and the fair adjustment of conflicting claims and equities existing between man and man; and when the reasons on which a rule is based do not call for its application in a given case, it would be a perversion of justice to apply it.

The reasons which called for an implied warranty in compulsory partition between co-parcenus at common law, apply here to such partitions as may be compulsorily made between any persons, who, under the laws of this State, are entitled to have such partitions made, and are thus well stated in the case of Ross v. Armstrong. "But this implied warranty and condition were, by the common law, confined to a partition made between

coparceners, and for the reason, it is supposed, that the right of compulsory partition was given by the common law only to coparceners, and not to joint tenants, or tenants in common, to whom the right was first given by statute. The common law having given this right in favor of coparceners, deemed it reasonable and just that they should not be placed in a worse condition by the partition (which could be compelled by writ of partition or a bill in chancery) than if they had continued to enjoy their respective interests without a partition; in which case, if suit had been commenced upon a paramount title, all must have been implicated, and in case of recovery, all must have sustained their due proportion of the loss. In order, therefore, that they should not be placed in a worse condition by a compulsory partition, the common law annexed to the partition the implied warranty, as a condition for their protection."

Partition is based on the fact, real or supposed, that the persons between whom it is made own the thing partitioned, and if they do so only in part, and the part not so owned in common be set aside to one or more of the supposed owners, then those who receive in partition that part of the thing which was owned in common, receive something in which the co-owners had an interest, for which in return those who receive a part not so owned receive nothing. It is to protect those who in partition, take that which was not owned in common, that the rule invoked in this case has an existence, and it exists only so far as is necessary to give such protection.

Through it protection is given to such persons, though a repartition of that actually owned in common or by requiring those who received that to compensate the others for the interest they owned before partition. The word "warranty" is an inapt expression when used to indicate the engagement resulting from partition, if it be understood to carry the same obligation and measure of liability which results from a general warranty of title made in a deed by which one person sells and conveys land to another; for the obligations resting on the parties in the two cases are different in some respects.

Whether the implied warranty arising on partition would pass an after acquired title may well be doubted, for the accession to the property partitioned would entitle the person through whose means, by an after purchase, it was acquired, to contribution. On failure of title to land conveyed by and with general warranty, the vendee would be entitled to recover from

his vendor the purchase money with interest, which is supposed to represent the value of the land; but in case of failure of title to land set apart to one in partition, this would not be the rule; for the value of the interest in the land actually owned by such person at the time partition was made with interest on it, would give to him full compensation, and would be its measure.

If repartition be sought on failure of title to the part set apart to one in such case, the co-owner whose share failed through defect in the common title, could only have such proportion of the land actually owned by all at the time of partition as his interest sustained to the entire land that ought to have been partitioned. As an illustration, should two persons supposing they owned, as tenants in common, in equal shares, one hundred acres of land, cause partition of it to be made, and each have set apart to him fifty acres of the land which they supposed they owned, then on failure of title to the land set apart to one, it would not be his right to have the value of the fifty acres set apart to him, but to have the value of one-half of the fifty acres which they did own, or to have repartition of that.

Thus far the implied engagement of the co-tenants would be extended and no further; while had the transaction been a sale by one to the other, through a deed with general warranty, the engagement would be more extensive.

Partition is not a means for acquring title, but through it every common owner may seek and acquire the right to the exclusive ownership and possession of a part of that which before partition was owned by all, which before partition each co-owner had equal right to use and possess.

If the implied warranty existing on compulsory partition be the equivalent of a general warranty made in a deed by which land is sold and conveyed, it would become indirectly a means of acquiring title to something to which none of the parties to an attempted partition had title, and it would extend in its operation further than is necessary to give full protection to the co-owner when title to land received in partition fails.

In the case before us there has been no failure of title to any part of the land which belonged to the estate of John Grigsby that was set apart to any one of his children in the attempted partition. No one of his heirs is called upon to surrender any part of the land which such heir inherited from him, though they may be compelled to submit to a repartition of the land, of which partition was attempted to be made. If the doctrine of

implied warranty, as invoked in this case, has application, it applies as between all parties to the attempted partition, between the children of John Grigsby by his first and second wives as well as between the children of each wife.   Is such a rule neces- sary for the preservation of any right any of the parties may have had before the partition was attempted?   We think not.

The right of each of the children of John Grigsby, by his first wife, to one-eighteenth of the land in controversy is as full and complete as it ever was, and is not controverted.   By virtue of what process or on what consideration can they claim to have the quantity of land which they inherited doubled?   There is no efficacy in an implied warranty resulting from an attempted partition which can work such an effect.

D. B. Grigsby, having received one-half the quantity of land that he inherited from his father and mother, now seeks to re- cover only the residue to which he is entitled by inheritance from his mother; and the defendant, now before us, claims through his sister, who had equal right with himself.   Under this state of facts, the implied warranty given in partition can not be made to operate any divestiture of right D. B. Grigsby may have through inheritance from his mother.   To permit him to recover what he was entitled to at the time partition was attempted, deprives no persons of what they were entitled to; and it would be singular, indeed, when the decree through which the partition was attempted was not sufficient of itself to bar his right to recover what he owned at the time it was entered, if its indirect effect—an implied warranty—could have such operation.

The charge complained of should not have been given.

It appears that the person through whom the appellee claims was a sister of D. B. Grigsby, entitled, if the attempted partition fairly represented the value of the several parts of the land set apart to the several children, to more land than she received and sold, and in disposing of the case we deem it proper to say that we see no good reason why the appellee, and all other persons similarly situated, may not be fully protected by having the land which they bought from Emeline Apsly, *nee* Grigsby, set' apart to them in the final partition which the plaintiffs ask shall be made of all the land which is described in the petition, if this can be done without detriment to other persons.

If, without the attempted partition, the vendor of the appellee had sold the particular tract which she did sell, under the rules

well settled in this State as elsewhere, the vendee would be entitled to have the particular land bought by him given to him in partition, if this can be done without prejudice to others interested in the entire land. Justice requires that this should be done if possible.

The appellee has severed from the other defendants, but this furnishes no sufficient reason why he should not have the relief suggested. The right of the parties may be determined in this proceeding in severance, and the ultimate adjustment of equities be made on final partition of the land described in the plaintiff's pleading.

For the error noticed, the judgment of the district court against D. B. Grigsby will be reversed and the cause remanded.

*Reversed and remanded.*