PORTER LINDSLEY ET AL V. MARGUERITE B. LINDSLEY.

No. 7882. Decided June 24, 1942.
Rehearing overruled July 22, 1942.
(163 S. W., 2d Series, 633.)

*Cloyd H. Read, Sawnie R. Aldredge, Hiram F. Lively, Royall R. Watkins, Zellner Eldridge, L. M. Rice, Lewis B. Lefkowitz* and *J. C. Muse, Jr.,* all of Dallas, for plaintiffs in error.

The court erred in holding that the testator's will, being clear and unambiguous and disposing of his entire estate, put his widow to an election as to whether to accept the benefits conferred upon her by the will or to claim her statutory exemption. Taylor v. Williams, 26 Texas 583; City of Oak Cliff v. State, 97 Texas 391, 79 S. W. 1068; Baldwin v. Baldwin, 134 Texas 428, 135 S. W. (2d) 92; 3 Tex. Jur., 312.

*Leake, Henry, Young & Golden,* of Dallas, for defendant in error.

In order to defeat the right of a surviving widow to the homestead and exempt personal property given to her by law, or to put her to an election as to whether she will take bequests made to her in the will of her deceased husband, it must conclusively appear from the will that it was the intention of the husband to expressly make the bequests in lieu of the statutory exemptions. Hocker v. Piper, 2 S. W. (2d) 997; Logan v. Logan, 112 S. W. (2d) 515; Hatch's Estate, 22 Am. St. Rep., 109; 22 A. L. R. 512.

MR. JUDGE SLATTON delivered the opinion of the Commission of Appeals, Section B.

The surviving widow of Henry D. Lindsley, deceased, brought this suit in the district court of Dallas County against the independent executor and trustee and the beneficiaries named in the will for the purpose of determining a dispute between said parties as to the proper construction of said will, which had theretofore been probated in the probate court of Dallas County.

The averments of the surviving widow made the will of her deceased husband a part of her trial pleadings and alleged that at the time of the death of her husband, who died November 18, 1938, and prior thereto he and his wife resided upon and used as their rural homestead approximately 500 acres of land situated about three miles from the corporate limits of the City of University Park, in Dallas County; that the land and personalty was the separate property of the husband and that the surviving widow was entitled under the Constitution and laws of Texas to the use and occupancy of 200 acres and the improvements thereon during her lifetime as her homestead and was entitled to have the same set apart to her, together with the exempt personal property.

Mrs. Lindsley further alleged that the bequests made to her in the will of her deceased husband were in addition to her homestead rights and not in lieu thereof, and that she was entitled to take such bequests under the will and assert her homestead rights, together with her rights to exempt properly under the laws of this State.

She further alleged that the executor and trustee who was in possession and control of all the property of Henry D. Lindsley, deceased, takes the position that the surviving widow, under the terms of the will, is put to an election whether she takes exclusively the property devised and bequeathed to her by the will or exclusively the homestead and exempt personal property given her as surviving widow by the laws of Texas.

She prayed for a construction of the will so as not to require an election by her and to require the executor and trustee to deliver to her both the property given to her under the will and the homestead and exempt personal property as provided for a surviving widow under the laws of Texas.

Demurrers filed by the adverse parties were sustained and upon the failure of Mrs. Lindsley to amend her suit was dismissed. Mrs. Lindsley perfected an appeal to the Court of Civil Appeals at Dallas. That court reversed the judgment of the district court and remanded the cause, the chief justice dissenting. 152 S. W. (2d) 415. The following provisions of the will are deemed material to a proper disposition of this appeal:

"I give, devise and bequeath in trust to Porter Lindsley of Dallas, Texas, as Trustee, and his successor trustee or trustees, all my estate, real, personal and mixed, for the following uses and purposes:

"1. To my wife, Marguerite Lindsley, I give, devise, bequeath and instruct my Trustee to give her a deed in fee simple title, the residence in which she now lives on Northaven Road, together with all contents therein, except my library as hereinafter provided, and including the lot, about 200 x 200 feet, on which this residence and garage are now situated. And, to her my wife, Marguerite Lindsley, I leave in addition the following:

"(A) Fifty (50) books out of my library to be selected by her.

"(B) That part of the livestock now on my Northaven Farms or which may be on same at the time of my decease and described generally as follows: All chickens, turkeys, ducks, guineas, etc., all milk cows.

"(C) Ten (10) acres (increased to 20 acres by the codicil) of land out of Northaven Farms in addition to the land on which my residence is now situated. This ten (10) acres to be selected by my wife, Marguerite Lindsley, but to be approved by Porter Lindsley.

"(D) Five Thousand ($5,000.00) Dollars in cash.

"(E) In addition to the $5,000.00 provided to be paid to my wife, Marguerite Lindsley, in cash, I leave her out of my general estate the sum of Twenty Thousand ($20,000.00) Dollars, to be paid to her at my Trustee's discretion and as my estate will permit.

"2. I direct that my Trustee shall pay to my daughter, Cadis Lindsley Vars, wife of Addison Vars, of Buffalo, New York, the sum of Twenty Five Hundred ($2,500.00) Dollars in cash.

"3. I have provided for my son, Henry D. Lindsley, Jr., the sum of Twenty Five Hundred ($2,500.00) Dollars, he being the beneficiary in a life insurance policy issued by the Praetorians of Dallas, Texas, in the sum of Twenty Five Hundred ($2,500.00) Dollars, and I direct my Trustee to deliver to him said policy of insurance, which shall constitute his interest in my estate.

"4. To Porter Lindsley I will and bequeath in fee simple that fifty (50) acres of land out of my Northaven farm lying in a parallelogram bounded on the East side by Inwood Road, on the South side by Northaven Road, and on the West side by Welch Road, provided that he, Porter Lindsley, desires to build his permanent home on said land. In the event he does not so desire, then this fifty (50) acres will go to my residuary legatee and Porter Lindsley will receive out of my general estate instead of said fifty (50) acres, the sum of Ten Thousand ($10,-000.00) Dollars.

"When Porter Lindsley may have built a residence on said Fifty (50) acres and occupies it as a home, then all question as to permanency of title in him shall have ceased and the fifty (50) acres shall thereafter be his without any strings of any kind on it, to do with entirely as he pleases.

"5. To Charles McKamy of Carrollton, Texas, I will and bequeath ten (10) acres of land out of Northaven Farms to be selected by him, but approved by Porter Lindsley, on Northaven Road between Preston Road and Inwood Road, provided he, the said Charles McKamy desires to use said ten (10) acres for his permanent home. In the event he does not so use same, then this ten (10) acres shall revert to my residuary legatee. But Charles McKamy can commence improving this ten (10) acres for his home at any time he pleases within five (5) years from my decease.

"6. I direct that my Trustee shall pay to Miss Ella V. Freeman of Dallas, Texas, long my valued and efficient secretary the sum of One Thousand ($1,000.00) Dollars in cash.

"7. I direct that my Trustee shall pay to the Salvation Army the sum of Five Thousand ($5,000.00) Dollars, to be used as it may desire in connection with its work in Dallas County, Texas. This bequest shall be paid out of the general proceeds of my estate.

"8. I direct that my Trustee shall pay to the Scottish Rite Crippled Children's Hospital of Dallas, Texas, the sum of Ten Thousand ($10,000.00) Dollars, to be paid out of my general estate.

"9. I direct that my Trustee shall pay to Elmer Scott, Trustee, the sum of Five Thousand ($5,000.00) Dollars to be used at his discretion for the Civic Federation of Dallas and in the event Elmer Scott does not desire to so use this sum, it shall revert to my general estate.

"10. I direct that my Trustee shall pay to the Endowment Fund of the American Legion, the National Organization, the sum of One Thousand ($1,000.00), to be paid out of my general estate.

"11. The balance of my books, after the fifty (50) are taken by my wife, as provided in Paragraph 5, Section 4, I desire to go to some public or semi-public institution, as shall be selected by Porter Lindsley, my Executor and Trustee.

"12. In the even my Trustee shall determine that my library shall go to the Carrollton and Farmers Branch Community, then I direct that there by paid One Thousand ($1,000.00) Dollars out of my general estate to Charles McKamy and Tom Field, Trustees, to be used as they may deem proper in connection with the most beneficial use of this library.

"13. The balance of my estate I will and bequeath to Southern Methodist University of Dallas, Texas.

"And I direct that there be a Committee consisting of Bishop Charles C. Selecman, Frank McNeny and Marvin Collum, which Committee shall determine how this bequest may be of greatest value to Southern Methodist University.

"That is, whether it go to the general endowment fund of the University, or to a special endowment fund of the University, or for the erection of one or more buildings for the University, or whether it go in whole or part for scholarships to the University.

"It is my desire, but this Committee is not bound by this desire, that at least four (4) scholarships—(2) for boys and

two (2) for girls—be provided in my name at said University in perpetuity.

"If necessary to carry out any of the bequests or provisions of this will, my Trustee herein named is empowered and directed to sell all my property, real, personal and mixed, and convert my entire estate into cash, as soon as, in his judgment, such sales can be effected without loss or sacrifice, and my said Trustee is expressly authorized and empowered to sell my Northaven Farms where I now live in its entirety or in tracts and parcels from time to time, as in his judgment he shall see fit, for the purpose of realizing the greatest sum therefrom; and he is further expressly authorized and empowered to operate, rent or lease said farm, or any unsold part thereof, until such time or times as my said Trustee shall in his judgment finally dispose of all said lands, or deliver them to my residuary legatee. Such sale or sales of my estate shall be made upon such terms and conditions, including sales for cash or credit or both, as my Trustee shall in his judgment see fit.

"The original Trustee and each successor Trustee, while acting as such under this Will, shall have power to collect, receipt for, invest, re-invest, loan convert and re-convert, sell, mortgage, improve, lease and control all and every part of the trust estate. He shall have power to execute and deliver all deeds, conveyances, transfers, licenses, assignments, leases, contracts or written instruments of any and every kind. He shall pay to himself all reasonable expenses of the trust estate and his own lawful expenses as Trustee, and his own lawful and reasonable compensation for his services as Trustee. No person having business with the Trustee shall be required to look to the application of any money, property or other things of value. In the exercise of the powers given or in the discharge of any duty concerning the trust estate, my Trustee is given full discretion and shall not be held responsible for any action taken, unless it is shown that he has acted in negligence or in bad faith.

■ It is well settled that a homestead right may be enjoyed by a surviving spouse upon property belonging to the separate estate of the decedent. Thomas et al v. Tyler et al, 6 S. W. (2d) 350. The deceased spouse may not by testamentary provision deprive the survivor of the use and occupancy of the homestead.

Hall v. Fields, 81 Texas 553, 17 S. W. 82; Reed v. Talley et al, 13 Texas Civ. App. 286, 35 S. W. 805, (writ denied).

■ Under Article 3822, Vernon's Annotated Civil Statutes, 1925, certain personal property is exempt to the family, including "(6) the family library and all family portraits and pictures." Under Article 3485 et seq. the probate court has authority to set apart "all such property of the estate as may be exempt from execution or forced sale * * *." Under Article 3476, Vernon's Annotated Civil Statutes, an allowance may be made to the widow and minors; under Article 3486 an allowance may be made in lieu of exempt articles. An allowance in lieu of a homestead is provided for in Article 3487. In the case of Runnels v. Runnels, 27 Texas 515, loc. cit. 520, having reference to one of the statutory allowances, it is said:

"It is an obvious consequence that the testator can by will impose no insuperable barrier to the assertion of the widow's claim to the property in lieu of which the appellant in this case is seeking an allowance."

In the case of Woolley v. Sullivan, 92 Texas 28, 45 S. W. 377, loc. cit. 381, the court say:

"These allowances are creatures of the statute, based upon the wise policy of securing to the widow and children temporary support and reasonable means with which to begin anew the contest for subsistence, and are wholly independent of the will of the testator. If the parent can deprive the children of these allowances by devising his property to his wife, we see no good reason for holding that he cannot do so by devising it to a stranger or in trust for the benefit of his creditors. This would thwart the very purpose and policy of the statutes. Zwernemann v. Von Rosenberg, 76 Texas 522, 13 S. W. 485; Hall v. Fields, 81 Tex. 553, 17 S. W. 82; Rev. St. 1879, art. 2009; Runnels v. Runnels, 27 Tex. 516."

A reading of the above mentioned statutes and the decisions of this court, some of which have been quoted, show that the widow's homestead rights, claim to exempt personal property and widow's allowance for support, are in virtue of the laws of this State and cannot be taken away by testamentary disposition. Authorities cited above. In the Hall case it is said:

"At common law the right of the wife to dower could not be defeated by the will of her husband, and if she was provided

for in the will in a manner inconsistent with her right of dower she could elect whether she would take her dower or surrender that right and take under the will as devisee."

In the early case (1858) of Carroll v. Carroll, 20 Texas 731, loc. cit. 744, it is said:

"The estate of the widow, in dower at Common Law, is somewhat analogous to that of the wife, under our system, in the community gains; and the rule is well established that the widow cannot be excluded from her dower, unless the intention to exclude her appear by express words or manifest implication from the terms of the will."

It is apparent in the present case that the will does not by "express words" exclude the right sought to be enjoyed by the surviving widow with respect to the homestead and exempt personal property if the widow accepts the bequests given under the will. By this we mean the will does not in terms say that the bequests are to be accepted in lieu of the homestead and exempt personal property rights. Under the rule stated in the Carroll case we are left to determine whether the intention to exclude the surviving widow from the enjoyment of the rights asserted appears from the terms of the will by "manifest implication."

"In such cases, it is not sufficient that the will *may* be construed as revealing such an intention. It is necessary that it be open to no other construction." Avery v. Johnson, 108 Texas 294, 192 S. W. 542.

Mrs. Lindsley, the surviving widow under the will, was given fifty books out of the family library, to be selected by her. Under clause 11 of the will the balance of the books, after fifty have been taken by the widow, as provided for in paragraph 6, section 4, "I desire to go to some public or semi-public institution as shall be selected by Porter Lindsley, my Executor and Trustee." In clause 12 there is made a contingent bequest in the sum of $1,000.00 to be used "* * * in connection with * * * the library." Such language, we think, not only reveals an intention on the part of the testator that the acceptance of the bequests under the will by Mrs. Lindsley preclude her acceptance of the remainder of the library, but such language is "open to no other construction." This conclusion is inesca-

pable when we consider that the decedent presumably knew that he could not by testamentary disposition deprive the surviving widow of her homestead rights and the right to claim exempt personalty and other allowances allowed by statutes, even though the estate with which he was dealing belonged to his separate estate; that he had these things in mind at the time the will was made is evidenced by the terms of the will wherein he gave the surviving widow the family residence in fee simple and by the will and cocidil gave her the fee simple title to 20 acres of land to be selected by her and agreed to by his *trustee* and the gift of $5,000.00 in cash and the further sum of $20,000.00 "to be paid at my trustee's discretion and as my estate will permit." The decedent evidently considered the protection which the laws of this State gives a surviving widow with respect to the family homestead, exempt personalty and allowances. The decedent presumably knew that he could not deprive the surviving widow of such rights, but he also knew that when he made testamentary disposition of a part of the exempt properly (the library), fifty books and other bequests to the surviving widow and the remainder of the estate to others, that a clear case of election would be presented to the widow. In the case of Philleo v. Holliday, 24 Texas 38, loc. cit. 45, it is said:

"The principle of election is, that he who accepts a benefit under a will, must adopt the whole contents of the instrument, so far as it concerns him; conforming to its provisions, and renouncing every right inconsistent with it; as where the wife claims something under the will which will disappoint the will."

It cannot be said that the surviving widow will not disappoint the will with respect to the remainder of the library if she is permitted to receive all of the exempt personalty, which would include the remainder of the library.

We think the will contains other provisions which lead to the conclusion that the widow was put to an election. The entire estate was given to the independent executor and trustee. The widow was given the residence, 20 acres of land and other bequests as above mentioned. Other contingent bequests were given to the trustee, Porter Lindsley, and McKamy to the extent of 60 acres of land. After specific bequests the balance of the estate was given to Southern Methodist University. The trustee, by clause 5, "* * * is further expressly authorized and empowered to operate, rent or lease said farm or any unsold part thereof

until such time or times as my Trustee shall in his judgment finally dispose of all of said lands or deliver them to my residuary legatee." Can it be said that the power of the trustee to operate, rent or lease the farm is not inconsistent with the use and occupancy of 200 acres thereof by the surviving widow? We think such language is clear and compelling, hence not open to any other construction than that the surviving widow was put to an election and, having elected to claim under the will, she cannot assert the rights with respect to the homestead and exempt personalty. Dakan v. Dakan, 125 Texas 305, 83 S. W. (2d) 620; Smith v. Butler, 85 Texas 126, 19 S. W. 1083; Dunn v. Vinyard, 251 S. W. 1043; Upson v. Fitzgerald, 129 Texas 211, 103 S. W. (2d) 147; Nelson v. Lyster, 74 S. W. 54.

The judgment of the Court of Civil Appeals which reversed the judgment of the trial court and remanded the cause is reversed and the judgment of the trial court is affirmed.

Commissioner Hickman not sitting.

Opinion adopted by the Supreme Court June 24, 1942.

Rehearing overruled July 22, 1942.

CAGE BROTHERS, ET AL, V. CHARLES D. WHITEMAN, ET AL.

No. 7916. Decided June 24, 1942.
Rehearing overruled July 22, 1942.
(163 S. W., 2d Series, 638.)

*Dan Moody* and *Herman Jones,* both of Austin, for plaintiffs in error.

It was error for the trial court to sustain plaintiff's plea in abatement to plaintiff's cross action against Bush (the landowner from whom both parties had leased the sand and gravel rights) seeking to make him a party to the suit. Maxwell v. Urban, 55 S. W. 1124; Skipwith v. Hurt, 94 Texas 322, 60 S. W. 423; John v. Hardin, 81 Texas 37, 40, 16 S. W. 624.

*Richey, Sheehy & Teeling,* and *Conway & Scharff,* all of Waco, for defendants in error.

Where the plaintiff Whiteman sues the defendant Cage Brothers for conversion only, alleging that he was the owner of said sand and gravel by virtue of a lease of said rights from Bush, the owner of the land, and that the defendants entered upon the land with full knowledge of his lease, and with such

knowledge willfully converted said sand and gravel, and he was praying for a judgment against them for the value thereof, it was not error for the trial court to dismiss a cross action by Cage Brothers against the landowner Bush, in which the defendant sought recovery from him of any amount recovered by plaintiff, for contribution, and for the amount of the royalty and purchase price paid by Cage Brothers to Bush. Wheeler v. Glazer, 137 Texas 341, 153 S. W. (2d) 449; Oats v. Dublin Natl. Bank, 137 Texas 2, 90 S. W. (2d) 824; Hodde v. Anderson, 105 S. W. (2d) 332.