## FRENCH v. FRENCH et al.
### No. 5676.

Court of Civil Appeals of Texas. Amarillo.
June 11, 1945.

Rehearing Denied June 25, 1945.

Vickers & Campbell, of Lubbock, and Carl E. Ratliff and D. E. Magee, both of Levelland, for appellant.

Nelson, Brown & McCleskey, of Lubbock, and Alvin R. Allison, of Levelland, for appellees.

PITTS, Chief Justice.

This is a suit to cancel a written agreement to partition real and personal property, to cancel a deed executed by reason of the terms of the contract to partition the property, and for the value of property wrongfully converted.

Appellant, Annie French, filed suit against appellees, Earl, Carl, Morris and Doyle French and Mrs. E. E. Pearson, a widow, alleging that appellant was a widow and the surviving wife of R. W. French, deceased, and appellees were the brothers and the sister of the deceased and the sole heirs by blood relation to the deceased; that through concealment of the truth, fraud and misrepresentations appellees induced her to sign a contract to partition real and personal property that belonged to her, save and except an undivided interest that appellees had by inheritance in one tract of land and that the contract and deed are void because they purport to partition property that belongs to appellant exclusively and in which appellees have no interest and

they purport to partition the said property without the same being supported by a valid consideration. Appellees filed a general denial, pleaded that the contract was executed as a peaceful, mutual agreement and that they had tendered to appellant her part of the property and since she had already received all of the $2,600 bank account they tendered to her by their pleadings the sum of $552.30 as a balance of her part of the proceeds from the sale of the personal property.

The case was tried to a jury and at the close of the evidence offered by appellant the trial court sustained a motion presented by appellees for an instructed verdict against appellant and under the verdict entered a judgment on January 23, 1945 for appellees, from which judgment an appeal was perfected to this court by appellant.

The record discloses that only appellant and one other witness testified; that the other witnesses testified only concerning the sale of the personal property in question and that appellant's testimony was not contradicted but was in effect as follows: that she and R. W. French were married in 1938, at which time R. W. French owned 147.6 acres of land situated in Hockley County, Texas, with an outstanding indebtedness against it; that R. W. French died intestate on October 22, 1943; that during the married life of appellant and R. W. French they occupied the 147.6 acres of land as a homestead and were living there at the time of his death; that she and R. W. French had no children; that during their married life she and deceased paid out of community funds the taxes on the 147.6 acres and paid $150 annually, plus interest on the outstanding indebtedness against the 147.6 acres occupied as a homestead and that she made the 1944 payment of $150, plus $82.52 interest, leaving a balance of $1,164 as outstanding indebtedness against the 147.6 acres; that at the time of the death of R. W. French there was a community estate existing between him and her that consisted in part of 54 acres of land situated in Hockley County, Texas, purchased during the marriage, with a debt of $550 then outstanding against it; that at the time of the marriage R. W. French owned some personal property which was commingled with community property during the marriage and which at the time of his death consisted of 21 head of cattle, 9 horses and mules, an automobile, 2 trailers, a tractor, 2 wagons, a feed mill, household goods, and other farm implements, all free of debt, and a $2,600 bank account; that R. W. French died on Friday, October 22, 1943, and was buried the following Sunday; that his brothers attended the funeral and, because of her illness, she went home with them to Fort Worth, Texas, on the following day (Monday) to see a doctor and spent a week with appellees, during a part of which time she was ill and appellees took her to see a doctor; that appellees began discussing with her a division of the property on the way to Fort Worth on Monday and discussed it with her several times during the week; that they told her it would be necessary to divide the property at once to avoid the appointment of an administrator; that they told her the cotton and feed could not be sold without a division of the property or the appointment of an administrator; that on Sunday following appellees called her in at Carl French's house and told her how the property should be divided and told her, among other things, "We are giving you more than you are entitled to. We are going to treat you right and give you more than you are entitled to;" that she did not then know what her legal rights were and what she was entitled to but had confidence in appellees and thought they would treat her right; that on the next day, November 1, 1943, appellees took her to an office in Fort Worth where they had the contract of partition drawn and all of them signed and acknowledged it; that she had nothing to do with the drawing of the contract or its terms; that she knew what was in the contract when she signed it but had trusted appellees to do the right thing and thought they had until she learned better later, and that she did not give any of her property to appellees and they did not pay her any consideration at the time or since the signing of the contract but they had since tried to get her to take only what property they offered her.

The contract upon which the suit was brought is as follows:

"State of Texas ⎱ Know All Men
Tarrant County ⎰ By These Presents:

"That this contract and agreement made and entered into on this the 1st day of November, 1943, by and between Annie French, surviving wife of R. W. French, deceased, of Hockley County, Texas, party of the first part, and Earl French of Levelland, Mrs. E. E. Pearson of Dallas County, Texas, Carl French of Tarrant Coun-

ty, Texas, Morris French and Doyle French both of Dallas County, Texas, being the brothers and sister of R. W. French, hereinafter designated parties of the second part, Witnesseth:

"That at the time of the marriage of first party and R. W. French, the said R. W. French was the owner of 147.6 acres of land, part of the Haskell County School land in Hockley County, Texas, and upon which we resided at the time of the death of said R. W. French, and against which there is a debt secured by lien to Amicable Life Insurance Company of Waco, Texas.

"That during the married life of first party and the said R. W. French they acquired as community property 54 acres of what is known as the Goodwin strip off of the Yellow House Ranch lands in Hockley County, Texas and which is encumber by a lien.

"That a large portion of the livestock and equipment on the lands above is separate property of the said R. W. French was his separate property and a large portion thereof community property of said French and first party.

"That it is the desire of all parties hereto to settle and divide in a friendly and peaceable manner the property of the said R. W. French, deceased, and it is therefore mutually agreed between the parties as follows;

"First party shall have as her share of said estate the 54 acre tract of land above mentioned and second parties agreed to execute proper deeds of conveyance, conveying to first all the right, title and interest of second parties in and to said tract of land; first party agrees to assume and pay the debts and liens against said land.

"Second parties shall have as their share of said estate the 147.6 acres of land above mentioned and first party agrees to execute a deed conveying all her interest in said tract to second parties, share and share alike and second parties agree to assume and pay all, debts and liens against said tract of land.

"The above constitutes all the real estate owned by deceased R. W. French and first party.

"The personal property belonging to first party and the said R. W. French, deceased, shall be divided and disposed of as follows:

"Cash in First National Bank of Levelland shall be divided one-half to first party and one-half to second parties, to be divided between second parties in equal shares.

"Household and kitchen furniture in the home of first party and deceased shall be the property of first party and in addition thereto first party shall have, five milch cows, one white sow (now heavy with pigs) and also a small three room house now located on the 147.6 acre tract of land which she is to be permitted to move onto the tract of land above awarded to first party; also the butane gas system now in the home of first party and deceased; also all chickens on said place shall be the property of first party.

"All other personal property now on said property or belonging to first party and deceased R. W. French, including all horses, mules, cattle, automobiles, tractors, and all other farm equipment shall be sold at public auction at a time and place to be determined and the proceeds derived from such sale shall be divided, one-half belonging to first party and one-half shall belong to and be the property of second parties in equal shares.

"It is further agreed between the parties that the 1943 crops grown on the lands above mentioned shall be the sole and separate property of the first party.

"It is further agreed by and between the parties that the second parties herein named constitute all the brothers and sisters of the deceased R. W. French; that there are no children of deceased brothers and sisters and that the parents of the said R. W. French are deceased.

"It is further agreed that no children were born to R. W. French and first party.

"Witness our hands this the 1st day of November, 1943."

The record reveals that appellees executed a deed on November 3, 1943 conveying all of their "right, title and interest" in the 54-acre tract of land to appellant for a consideration of $10 and tendered it to appellant and that on November 3, 1943 appellant executed a warranty deed prepared at the instance of appellees conveying to appellees the 147.6 acres of land for a consideration of $10 and delivered the same to appellees; and that the last deed has been recorded in the office of County Clerk of Hockley County, Texas.

The record further discloses that the livestock and other personal property enumerated in the contract were sold at public auction under the direction of appellees for

the sum of $4,229, and none of that sum has been delivered to appellant.

Article 2571, sec. 2, Revised Civil Statutes, provides that, "If the deceased have no child or children, or their descendants, then the surviving husband or wife shall be entitled to all the personal estate, and to one-half of the lands of the intestate, without remainder to any person, and the other half shall pass and be inherited according to the rules of descent and distribution; * * *."

The record discloses that the deceased left no will; that there had been no administration on the estate of deceased; that deceased had no children; that his parents were dead and that appellees were his brothers and sister and the only surviving heirs to participate in the property rights of deceased.

Under the law of descent and distribution appellant was entitled to all the personal property, both separate and community, of which deceased was possessed at the time of his death; she was entitled to the 54-acre tract of land purchased during the marriage subject to the debt against it and she was entitled by the law of inheritance to a one-half interest in the 147.6 acres subject to one-half of the debt against it, as well as to an adjustment of equities on the other one-half of the 147.6 acres because of the community funds applied on the indebtedness against said land during the marriage of appellant and deceased and because of the payment made on the said indebtedness by appellant in 1944. It is the well-settled law that the surviving spouse may enjoy a homestead right upon property which is part of the separate estate of the deceased. Lindsley et al. v. Lindsley, 139 Tex. 512, 163 S.W.2d 633; Thomas v. Tyler, Tex.Com.App., 6 S.W.2d 350. Such a homestead right is not inherited by the surviving spouse but is acquired by virtue of Article XVI, sec. 52 of the State Constitution, Vernon's Ann.St., and by the statutes. Roots v. Robertson, 93 Tex. 365, 55 S.W. 308; Warner v. Huey, Tex.Civ.App. 29 S.W.2d 452, and affirmed, 124 Tex. 252, 77 S.W.2d 201.

Article 3496, Revised Civil Statutes, provides that, "The homestead shall not be partitioned among the heirs of the deceased during the lifetime of the widow, or so long as she may elect to use or occupy the same as a homestead * * *." Article 3498, Revised Civil Statutes, provides that the homestead rights of the widow of the deceased are the same whether the same be the separate property of the deceased or community property between the widow and the deceased.

Under the cited authorities the only interest appellees have in the estate of R. W. French, deceased, is an undivided interest in one-half of the 147.6-acre tract of land subject to the adjustment of equities therein, and subject to their pro rata part of the indebtedness against it, and subject to the homestead rights of appellant and such tract of land cannot then be partitioned among them so long as appellant elects to use or occupy it as a homestead.

It has been held many times that a partition deed or agreement does not pass title but sets over to those who already have title or interest in the property a definite portion of the property theretofore owned or held in common. Hamill & Smith v. Ogden, Tex.Civ.App., 163 S.W.2d 725; Reyes v. A. O. Kolberg, Inc., Tex.Civ.App., 101 S.W.2d 351; Jones v. State, Tex.Com. App., 5 S.W.2d 973; and other authorities cited in these cases.

It is obvious from the record that appellees sought to partition the property belonging to deceased between themselves and appellant. It has also long since been held that the basis of partition of property is co-ownership and it is presumed that the persons proposing to partition property own at least an interest in the said property and that an attempt to partition property between one who owns an interest in the property and one or more who own no interest in it is not a partition of the property and has no force and effect and the instrument which attempts to partition the property under such circumstances is void for want of consideration. Davis v. Agnew, 67 Tex. 206, 2 S.W. 376; Grigsby v. Peak, 68 Tex. 235, 4 S.W. 474, 2 Am.St.Rep. 487; Barkley v. Stone, Tex.Civ.App., 195 S.W. 925; 32 Tex.Jur. 145, sec. 1.

In the instant case the record discloses that the parties were attempting to partition as a unit all the property, both real and personal, of which deceased was possessed at the time of his death while there was co-ownership only of the 147.6 acres and it was the only property subject to partition with the limitations above mentioned on that, but appellees took all of it, together with a large part of the personal property. It is admitted that appellant

still occupies the homestead. Under her homestead rights it is her privilege to occupy and use the house of three rooms, as well as to enjoy the comforts of the butane gas system. Under the rule laid down in the case of Sargeant v. Sargeant, 118 Tex. 343, 15 S.W.2d 589, and, Tex.Civ.App., 19 S.W.2d 382, appellant was entitled to the growing crops in 1943 and she already owned and was entitled to all of the other property awarded her by the terms of the contract, as well as the personal property appellees took from her.

Under the record and under the law, appellees did, unjustly, and without legal authority, dispossess appellant of much of her own property without her knowing what her legal rights were. It also appears to us from the record that appellees misled appellant about her legal rights in the property settlement; that appellant had confidence in appellees and relied on their representations; that both the pleadings and the evidence raised an issue of fraud that should have been submitted to the jury and that the trial court was in error in directing a verdict against appellant.

Because of the errors above shown, the judgment of the trial court is reversed and the cause is remanded.