EAST TEXAS SAVINGS AND LOAN ASSOCIATION OF TYLER, Texas, et al., Appellants,

v.

Mrs. L. L. DAVIS, Appellee.

No. 7289.

Court of Civil Appeals of Texas.

Texarkana.

April 11, 1961.

Rehearing Denied May 9, 1961.

Small, Small & Craig, Austin, Reeves & Reeves, Power, McDonald & Mell, L. L. James, Tyler, for appellants.

Smith & Smith, Tyler, for appellee.

DAVIS, Justice.

On January 3, 1953, L. L. Davis bought stock certificate No. 2755 from East Texas Savings and Loan Association. On February 13, 1953, L. L. Davis married Cora E. Ferguson. Prior to this marriage, L. L. Davis had been married twice, and had been divorced. By his first marriage he had a daughter, Rittia Lee Davis Venable, whose husband is Murray Venable. At the time of his last marriage, L. L. Davis

owned his home, some furniture, an automobile, and the stock certificate issued by East Texas Savings and Loan Association. On January 3, 1956, L. L. Davis and wife carried stock certificate No. 2755 to the Association, and at the request of L. L. Davis, the Association changed the name on the certificate from "L. L. Davis" to "L. L. Davis or Mrs. L. L. Davis". At the same time, Mr. Davis and Mrs. Davis executed a signature card and contract furnished to them by the Association, which contract reads substantially as follows:

"Joint Savings Account.

"Withdrawal

One signature only required for

Account No. 6287

"No. of Shares — 60 —

"L. L. Davis or Mrs. L. L. Davis

"Type all Names:

"As joint tenants with right of survivorship and not as tenants in common, the undersigned hereby apply for a membership and for a joint savings account in the

"East Texas Savings & Loan Association

"Tyler, Texas

and for issuance of evidence of membership in the joint names of the undersigned as joint tenants with right of survivorship and not as tenants in common. The signatures of the undersigned are shown below, and the Association is hereby authorized to act without further inquiry in accordance with writings bearing any such signature; it being understood and agreed that any one of the undersigned who shall first act shall have power to act in all matters related to the membership and any savings account in said Association held by the undersigned, whether the other person or persons named hereon be living or not. Payment or delivery or a receipt or acquittance signed by any one of the undersigned shall be a valid and sufficient release and discharge of said Association from any and all claims, demands and obligations of every nature whatsoever by any or all of the undersigned. The undersigned herewith authorize the said Association to accept drafts, checks, money orders and other credit instruments for credit to this account, whether payable to either one or all of the undersigned, and if not endorsed to supply endorsement as may be required. "We hereby appoint Leo Chesley, Manager of the Association, or in his absence the person who shall then be the Chairman of the Board of Directors, our lawful attorney in fact, and hereby authorize him to vote our proxy upon all shares held by us in said Association at all regular or special meetings of the Association at which we may not be present in person.

"Dated at Tyler, Texas, this the 3rd day of January, 1956.

/s/ L. L. Davis

"(1) Signature

"/s/ Mrs. L. L. Davis

"(2) Signature"

On January 8, 1955, L. L. Davis and Mrs. L. L. Davis purchased from First Federal Savings and Loan Association Certificate No. 2086 for $1,000. On January 3, 1956 they purchased from First Federal Savings and Loan Association Certificate

No. 2765 for $1,000. Each of said certificates was issued in the name of L. L. Davis or Mrs. L. L. Davis. This was while they were married, and was issued on a joint savings account with the right of survivorship and not as tenants in common, the same way as the other stock certificate with East Texas Savings and Loan Association.

On May 7, 1956, L. L. Davis executed a Will. He appointed Cora E. Davis, his wife, as Independent Executrix. Omitting the caption and signature, the Will reads as follows:

"I.

"I direct that all expenses of last illness and funeral as well as estate and inheritance taxes be paid by my executrix hereinafter appointed.

"II.

"I give to my wife, Cora E. Davis, our homestead located at 905 North Bois d'Arc Avenue in the City of Tyler, State of Texas, and described as all that lot or parcel of land situated within the County of Smith, State of Texas, in the corporate limits of the City of Tyler, to-wit:

"A part of the Isaac Lollar Survey No. 134, Abst. No. 574, and being all of Lot No. 1 and the North 5 feet of Lot No. 2 of the 'Fleishel and Goodman Addition' to said City of Tyler, according to plat of said addition recorded in Vol. 34, page 345, Deed Records of Smith County, Texas. ·

"Said Fleishel and Goodman Addition is a subdivision of Lot No. 17 of the 'Ira Ellis 21 lots.'

"The Fleishel and Goodman Addition, according to the official map of the City of Tyler, is designated as New City Block No. 215;

as well as all of our household furniture, our automobile, all personal ef-fects and belongings and other property of a similar nature used personally or in or about the home.

"III.

"All the rest and residue of my estate consisting of cash, bonds, stocks, and personal property of a similar nature I give equally, share and share alike, to my wife, Cora E. Davis, and my daughter, Rittia Lee Venable, to be divided one-half (½) each at the earliest possible time after the payment of expenses as above provided."

L. L. Davis died July 10, 1959. Mrs. Davis filed his Will for probate. Rittia Lee Venable, his daughter, filed a contest. The contest was withdrawn and the Will was admitted to probate on October 14, 1959. Immediately upon probation of the Will, Mrs. Davis proceeded to try to collect the money for the stock certificates that had been issued to her and her husband. Mrs. Davis collected $2,000 from First Federal Savings and Loan Association, but East Texas Savings and Loan Association refused to pay the money to Mrs. Davis, individually. Mrs. Venable took the position that she had been granted a one-half interest in the stock certificate, one-half the money in the bank, and one-half of a burial certificate by the Will of her father, L. L. Davis.

East Texas Savings and Loan Association had actual notice of the adverse claims and always admitted that the $6,000 belonged to either Mrs. Davis or to Mrs. Davis and Mrs. Venable. It was unable to get an agreement between them for the payment of the money, and was compelled to file an interpleader suit asking the court to decide the issue. In the suit the Association asked the court to allow it an interpleader fee for its attorneys in the sum of $450 and costs of court. It filed the suit on November 3, 1959, naming Cora E. Davis, individually, and as Independent Executrix of the Estate of L. L. Davis, deceased, and Rittia Lee Venable as de-

fendants. At the time of filing the suit, it paid the $6,000 into the registry of the court. Mrs. Davis answered, whereby she claimed the entire sum of $6,000 under the joint tenancy agreement, with right of survivorship according to the contract that was entered into with L. L. Davis on November 3, 1956. Mrs. Venable, by a cross-action and third party claim, alleged that under the Will of L. L. Davis, one-half interest in the $6,000, one-half interest in the $2,000 which Mrs. Davis had collected from the First Federal Savings and Loan Association, one-half of the money on deposit in a Tyler bank, and one-half interest in the burial certificate belonged to her. *The First Federal Savings and Loan Association, the Tyler Bank, nor The Brotherhood of Railway and Steamship Clerks were made parties to the suit.*

Trial of the case was before the court without a jury. Judgment was entered that appellee, Mrs. Davis, recover the full sum of $6,000 with 4% interest thereon from June 30, 1959 to November 19, 1959, and with 6% interest from and after November 19, 1959, until paid. The judgment further provided that all relief sought by East Texas Savings and Loan Association, and by Mrs. Venable was denied. They excepted and have perfected their appeals.

Appellant, Mrs. Venable, brings forward 26 points of error. Her most important points pertain to the election taken by Mrs. Davis by taking under the Will; and, the right of Mrs. Davis to continue to act as Independent Executrix. As to the election, it must be decided whether or not Mr. Davis willed something that he did not have a right to will, and that Mrs. Davis accepted it under the Will.

In paragraph II of the Will, Mr. Davis willed to Mrs. Davis his homestead and his car. These items were evidently separate property that Mrs. Davis would not have received had she not probated the Will and accepted under it. Mr. Davis also willed to Mrs. Davis all household furniture and personal effects and other property of a similar nature used in or about the home. Under the evidence in the case, a part of the furniture was his separate property at the time they married. But other household furniture was acquired after the marriage, which was community property. He had no authority to will *all* the household furniture. This he did, and Mrs. Davis accepted it, along with other property, as devised by the Will.

In paragraph III of the Will, he gave *all* the rest and residue of his estate, consisting of cash, bonds, stocks and personal property of a similar nature equally to his wife, Mrs. Davis, and to his daughter, Mrs. Venable. Actually, he only owned one-half of the money in the bank, and one-half of the stock certificates in the First Federal Savings and Loan Association. As we construe the Will, he willed all of the money in the bank and all of the stock certificates in the First Federal Savings & Loan Association, one-half to his wife, and one-half to his daughter. This, he had no authority to do. The homestead which she accepted as being willed to her in paragraph II, according to the inventory and appraisement, was worth $7,000. The car was worth $150. Mrs. Davis reported to the Probate Court that Mr. Davis did not have any community property, and she so testified upon the trial of the case. She also took the position that the money belonged to her, but she did not give any reason therefor.

■ Under the law of Texas, the legatee or devisee under a will is put to a choise (election) under a will of accepting the beneficial interest offered by the testator in lieu of some property they are entitled to but which is attempted to be taken from them by the law. Under such election, they must make a choice, regardless of the relative value of the two inconsistent rights. White v. Hebberd, Tex. Civ.App., 89 S.W.2d 482, n. w. h.; Dakan v. Dakan, et al., 125 Tex. 305, 83 S.W.2d 620; Leach et al. v. Leach et al., Tex.Civ. App., 208 S.W.2d 618, wr. ref., n. r. e.; Edsall et al. v. Hutchings, Tex.Civ.App.,

143 S.W.2d 700, err. ref.; Wright v. Wright et al., 154 Tex. 138, 274 S.W.2d 670; Lindsley et al. v. Lindsley, 139 Tex. 512, 163 S.W.2d 633; Cheatham et al. v. Mann, et al., Tex.Civ.App., 133 S.W.2d 264; 97 C.J.S. Wills § 1237, p. 8; 44 Tex. Juris. 874, Sec. 294; Fairbanks v. Mc-Allen et al., Tex.Civ.App., 170 S.W.2d 581, err. ref.; Gillman v. Gillman, Tex. Civ.App., 313 S.W.2d 931, wr. ref., n. r. e.

■ The appellant, Mrs. Venable, contends that the appellee, Mrs. Davis, is not entitled to defend this suit as Independent Executrix, nor is she entitled to pay her attorney's fees out of the funds of the estate. The only attorney's fees to which appellee is entitled to charge against the estate is a reasonable fee for probating the Will. Whatever fee that has been incurred in the defense of this suit will have to be paid by Mrs. Davis, personally. Haynes v. Clanton, Tex.Civ.App., 257 S. W.2d 789, n. w. h.; Smith et vir v. Negley et al., Tex.Civ.App., 304 S.W.2d 464. It is not advisable to remove her as Independent Executrix.

■ We have delayed the opinion in this case on the strength of the decision by the Civil Appeals and the Supreme Court in Hilley v. Hilley, 327 S.W.2d 467, error granted, and affirmed 342 S.W. 2d 565. Under the holding of the Supreme Court in the Hilley case, the stock certificates in the First Federal Savings and Loan Association were community property not subject to the joint tenant agreement with the right of survivorship. Mr. Davis had the power to dispose of his interest in such stock by Will. Mr. Davis did dispose of *all* of the First Federal Savings and Loan Association stock certificates by the Will, as well as *all* the money that was on deposit in the bank. Likewise, he disposed of all the stock certificate in the East Texas Federal Savings and Loan Association by the Will.

As evidence of the fact that Mr. Davis retained complete control of the stock certificate with East Texas Federal Savings

and Loan Association he caused them to make a note on its ledger card in connection with his account and stock certificate that all matters relative thereto were "Confidential—No Information to Anyone except Mr. Davis." Upon the trial of the case Mrs. Davis testified about the Savings & Loan certificates as follows:

"Q. You claim—it is your position, then, that the Federal Savings & Loan stock, that that is yours and wasn't yours and Mr. Davis' according to the contract that you executed with the Federal Savings & Loan Association? A. I say we went equal on everything.

"Q. How is that? A. *We went equal on everything, after we were married. What was mine was his and what was his was mine. We were equal on everything, after we were married.* Therefore, when I put mine out, his was already out on interest and everything; well, then, I went on and accumulated the rest of that. After all, I have worked practically since I was out of high school and I have saved my money; and, therefore, I figure that this other should come out of Letchers." (Mr. Davis). (Emphasis supplied).

There is no evidence of a gift of the East Texas Savings & Loan Association stock certificate by Mr. Davis to Mrs. Davis. Yet, there is evidence that he willed one-half of such stock to his wife, and one-half to his daughter. Mrs. Davis took the position in the trial of this case that she owned all of the stock certificates with East Texas Savings & Loan Association and First Federal Savings & Loan Association by virtue of the joint tenancy agreements with the right of survivorship. She also claimed all of the money that was in the bank, but gave no reason therefor.

We will note that the joint operation agreements were not acknowledged, as required by law.

Appellant, East Texas Savings & Loan Association, brings forward eight points of error in which it complains of the action of the trial court: (1) in holding that there was not a reasonable doubt, both in law and in fact, as to which of the conflicting claimants were entitled to the $6,000; (2) in holding that it had wilfully refused to pay the funds to Mrs. Davis; (3) in finding that no fact existed whereby it could conclude it might be subjected to a doubtful recovery if it paid the funds to Mrs. Davis, individually; (4) in holding that it had refused to pay the sum of $6,000 to Mrs. Davis, individually, and at the time of filing of this suit it had not been threatened with litigation involving said funds; (5) in refusing to find that Mrs. Davis never made demand on it for the payment of funds to her as Independent Executrix; (6) in entering judgment against it for interest, because appellant never did claim such funds; (7) in refusing to enter judgment allowing it a reasonable attorney's fees and costs; and, (8) in finding appellant continued to use the funds in question under the terms of the joint account agreement for the reason that such findings are contrary to the undisputed evidence.

Appellant Association was aware of the provisions of Art. 881a–23, Vernon's Ann. Civ.St., which provides that when shares of a savings and loan association are issued in the name of two or more persons or in the name of their survivor, the survivor or either party shall have power to act in all matters relating to the share, whether the other person be living or dead, and that the value of the share may be paid to any such person who shall request the same, whether the other person be living or dead. Such payment to such person shall be a valid release of such association for the payment so made. *This statute contains no provisions with reference to the occasion where the association is placed on notice of conflicting claims to the value of the shares before it pays out the funds.* This statute has

not been construed by any appellate court where such state of facts existed. On the other hand, Art. 342–710 V.A.T.C.S. applying to banks and containing comparable provisions, has been the subject of several cases. Pruett et al. v. First Nat. Bank of Temple, Tex.Civ.App., 175 S.W. 2d 658, 661, n. w. h.; the plaintiff alleged that his brother, a single man, and their mother had been depositing money in a savings account in the bank to their joint account, and that the brother had died intestate without having withdrawn any part of it, and that their mother had died intestate without having withdrawn the funds. The mother had delivered to a third person a direction to the bank to pay the funds to such other person. The sole question decided by the case was whether the bank had properly paid out the money on the order. The banking statute was cited, and the court placed great reliance upon the fact that the bank *had not been put on notice* of plaintiff's claim. In speaking of the statute the court said:

"Appellee bank *had no notice in writing or otherwise* of the claim of appellants prior to the payment of the account upon Mrs. Dyess' order and check." (Emphasis added).

In Adams v. Jones, Tex.Civ.App., 258 S. W.2d 401, 402, n. w. h., the court said:

"In Pruett v. Bank this Court held that the Bank was not liable for paying to the order of the survivor of a joint account a deposit created under terms similar to those involved here, *the Bank having no prior notice of adverse claims.*" (Emphasis added).

Our Courts, in construing Art. 342–710, applying to banks, have attached importance to the fact that the banks are protected by the statutes, when they pay out funds of a joint account *without notice* of adverse claims to the funds. We believe a like construction should be applied to Art. 881a–23, applying to savings and loan associations. Appellant Association, *with actual notice of adverse claims,* was jus-

tified in refusing to pay the money to Mrs. Davis, individually.

On October 15, 1959, appellee, Mrs. Davis, demanded in writing that appellant, East Texas Savings & Loan Association, pay to her, individually, the $6,000. Mrs. Venable was demanding payment to her of $3,000. Accompanying Mrs. Davis' writing was a copy of the Will, the Order probating the same, and Letters Testamentary. The appellant knew of some trouble about the estate, as it had been contacted by the Honorable R. P. Power, attorney for Mrs. Venable. Appellant Association contacted her and her attorney, and agreed to pay the money to her as Independent Executrix; or, agreed to pay one-half of same to her individually and keep the other one-half for future disposition because of the claim of Mrs. Venable under the Will. Mrs. Davis refused to accept half of the $6,000, or all of it, as Independent Executrix. Within 30 days from that date, appellant Association filed the interpleader suit. From the evidence in the case, appellant Association was fully authorized to file the interpleader suit, because there was definitely adverse claims as to the rights of the parties to the money.

Under the evidence in the case, appellant Association did everything that it could have done to prevent a suit being filed against it. We hold that it was entitled to file the interpleader suit, and is likewise entitled to an attorneys' fee in the sum of $450 and costs of court. The attorney's fee and costs of court are to be charged against the $6,000 paid into the court, and charged equally against appellant, Mrs. Venable, and appellee, Mrs. Davis. Rule 43, Vernon's Ann.Texas Rules of Civil Procedure; Greer et al. v. Franklin Life Ins. Co., 148 Tex. 166, 221 S.W. 2d 857; Melton et al. v. American Surety Co. of New York, Tex.Civ.App., 240 S.W. 574, err. ref.; Barnett et al. v. Woodland, Tex.Civ.App., 310 S.W.2d 644, wr. ref., n. r. e.; Shroff, et al. v. Deaton, Tex.Civ. App., 220 S.W.2d 489, n. w. h.; Security

State Bank of Pharr v. Shanley et al., Tex. Civ.App., 182 S.W.2d 136, n. w. h.

■ From the errors hereinabove pointed out the judgment of the trial court is reversed and judgment is here rendered as follows:

That the appellant, East Texas Savings & Loan Association do have and recover an attorney's fee of $450, and costs of court to be charged equally against the appellee, Mrs. Davis, and the appellant, Mrs. Venable.

That the appellant, Mrs. Venable, do have and recover of and from the Appellee, Mrs. Davis, one-half interest in the $6,000 of the East Texas Savings and Loan Association stock, less the attorney's fees and costs in the trial court; one-half interest in the $2,000 of First Federal Savings & Loan certificates collected by the appellee, Mrs. Davis; one-half interest in all money that was in the bank at the time of the death of Mr. Davis; and, one-half interest in the burial certificate that was owned by Mr. Davis at the time of his death. This part of the judgment is subject, however, to payment of one-half the attorney's fees allowed the appellant, East Texas Savings & Loan Association, one-half the cost in the trial court, one-half of the burial expenses, one-half the cost of the tombstone, one-half of the attorney's fee to be allowed by the trial court for probating the Will, and one-half of the cost of the probate proceedings in the County Court.

There was no evidence as to the amount of reasonable attorney's fee for probating the Will. That part of the case is reversed and remanded to the trial court with instructions that the attorney's fee for probating the Will be fixed, and judgment entered thereon.

All costs of this appeal will be adjudged against the appellee, Mrs. Davis.

It is so ordered.